**METROPOLITAN DETROIT AREA HOSPITAL SERVICES, INC., a Michigan non-profit Corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 7–70794.

United States District Court, E. D. Michigan, S. D.

Feb. 9, 1978.

858

Miller, Canfield, Paddock & Stone by Stevan Uzelac, John J. Collins, Jr., Detroit, Mich., for plaintiff.

James K. Robinson, U. S. Atty. by Peter Jerome Kelley, Asst. U. S. Atty., Detroit, Mich., for defendant.

OPINION

FEIKENS, District Judge.

Plaintiff, Metropolitan Detroit Area Hospital Services, Inc. (Metropolitan) is a nonprofit corporation owned and operated cooperatively by six Detroit area hospitals; its purpose is to provide laundry services to those hospitals. Prior to the incorporation of Metropolitan on June 15, 1970, each participating hospital maintained separate "inhouse" laundry facilities to furnish services now provided by Metropolitan. In essence, the hospitals pooled their resources to form the laundry cooperative and now pay to Metropolitan a rate designed to cover the laundry's costs and overhead, including debt retirement. Metropolitan is controlled by a Board of Trustees the members of which are appointed by the governing bodies of the participating hospitals. Each hospital appoints two members to the Board of Metropolitan.

Although presently Metropolitan provides laundry services only, its Articles of Incorporation allow for a significant expansion of hospital services. Each participating hospital is exempt from federal income tax or is publicly owned and operated as a municipal corporation. Metropolitan is exempt from Michigan *ad valorem* personal and real property taxes and from Michigan sales tax. M.C.L.A. 211.7; *Hospital Purchasing Service v. City of Hastings,* 11 Mich.App. 500, 161 N.W.2d 759 (1968).[1]

In 1973 Metropolitan paid $4,811.00 in federal income taxes. The pleadings do not show what amount, if any, Metropolitan paid in income taxes for 1974. In 1975 it paid $39,822.00. On April 17, 1975 Metropolitan filed with the Internal Revenue Service an application for recognition of exemption, asserting that it was a charitable organization under Int.Rev.Code § 501(c)(3); 26 U.S.C. § 501(c)(3) and, thus, entitled to federal income tax exemption because of Int.Rev.Code § 501(a); 26 U.S.C. § 501(a). IRS denied it an exemption on September 1,

1. In this case no appeal was taken to the Michigan Supreme Court.

1976, and upon receipt of Metropolitan's letter of protest on November 4, 1976, IRS formally restated its previous position denying to Metropolitan a tax exemption. Metropolitan received this letter on or about December 26, 1976.

Metropolitan also filed a claim for refund in an amended U.S. corporation income tax return, dated October 26, 1976. To support this claim it furnished supplemental information to the IRS in a letter dated November 12, 1976. IRS, however, found insufficient grounds upon which to reduce Metropolitan's tax liability and so informed Metropolitan on February 11, 1977.

On April 1, 1977 Metropolitan filed its complaint in this court against the IRS to recover $44,633.00. It now seeks summary judgment, pursuant to F.R.C.P. 56, contending there is no genuine issue as to any material fact and that it is entitled, therefore, to judgment in its favor as a matter of law. I agree.

The facts as stated are not disputed by the parties. The only question demanding resolution is whether, under these facts, the plaintiff is entitled to a federal income tax exemption under Section 501(a) because of Section 501(c)(3) of the Internal Revenue Code. Although this question is singular, it must be analyzed in three parts. First, is plaintiff, as a cooperative organization owned and operated by tax exempt hospitals, entitled to claim a tax exemption under Section 501(c)(3) of the Internal Revenue Code, or must it qualify for an exemption, if at all, under the more narrowly drawn Section 501(e)? Second, is plaintiff a charitable organization within the meaning of Section 501(c)(3) and, therefore, entitled to a Section 501(a) exemption? Third, is plaintiff a feeder organization under Section 502 and, therefore, not entitled to an exemption under Section 501(a)?

## I.

Section 501(a) of the Internal Revenue Code provides generally for certain tax exemptions:

An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

Plaintiff contends that since it is a charitable organization as described in Section 501(c)(3), it is entitled to a Section 501(a) exemption. Section 501(c)(3) provides:

(c) List of exempt organizations.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

Defendant counters this argument in part by maintaining that plaintiff, as a cooperative hospital service organization, must qualify for exemption, if at all, under Section 501(e), rather than under Section 501(c)(3). Section 501(e) provides in part:

Cooperative hospital service organizations.—For purposes of this title, an organization shall be treated as an organization organized and operated exclusively for charitable purposes, if—

(1) such organization is organized and operated solely—

(A) to perform, on a centralized basis, one or more of the following services which, if performed on its own behalf by a hospital which is an organization described in subsection (c)(3) and exempt from taxation under subsection (a), would constitute activities in exercising or performing the purpose or function constituting the basis for its exemption: data processing, purchas-

ing, warehousing, billing and collection, food, industrial engineering, laboratory, printing, communications, record center, and personnel (including selection, testing, training, and education of personnel), services; and

(B) to perform such services solely for two or more hospitals each of which is—

(i) an organization described in subsection (c)(3) which is exempt from taxation under subsection (a),

(ii) a constituent part of an organization described in subsection (c)(3) which is exempt from taxation under subsection (a) and which, if organized and operated as a separate entity, would constitute an organization described in subsection (c)(3), * * * *

Defendant argues that since laundry service is not included in the list of exempt hospital services in Section 501(e), plaintiff cannot receive a Section 501(a) exemption.

Plaintiff responds, and with this I agree, that as to cooperative hospital service organizations, Section 501(e) contains a list of exempt organizations additional to those included in Section 501(c) and is not, as defendant maintains, an exclusive list. In *United Hospital Services, Inc. v. United States*, 384 F.Supp. 776 (S.D.Ind.1974), Judge Dillin took the identical position:

The government argues that the addition of what is now Section 501(e) in 1968 clearly shows the intent of Congress to exclude hospital laundry service organizations from being treated as charitable organizations under Section 501(c)(3). Section 501(e) provides that cooperative hospital service organizations will qualify for exemption if they perform one of the following services: data processing, purchasing, warehousing, billing and collection, food, industrial engineering, laboratory, printing, communications, record center and personnel. There have been no interpretive regulations promulgated for this subsection. Congressional reports are quoted to show that the omission of "ordinary, general and commercial" laundry services from the list was intentional.

The Court believes it to be true that the Congress intentionally omitted ordinary, general and commercial laundry services from the blanket exemption granted to hospital cooperatives in Section 501(e). It does not follow, however, that the addition of Section 501(e) excludes UHS from consideration as a Section 501(c)(3) charitable organization on its own merits. UHS has consistently maintained in its claim for refund and in its briefs that Section 501(c)(3) applies. The question of whether it is organized and operated for an exempt purpose is a question of fact for this Court to decide. *Underwriters' Laboratories v. C. I. R.*, 135 F.2d 371 (7 Cir. 1943).

UHS was incorporated and doing business some years before Section 501(e) was adopted in 1968. It was either a charitable organization before 1968, under then existing law, or it was not. The Court holds that it was, for reasons above and hereafter set out. The clearly expressed Congressional purpose behind the enactment of Section 501(e) was to enlarge the category of charitable organizations under Section 501(c)(3) to include certain cooperative hospital service organizations, and not to narrow or restrict the reach of Section 501(c)(3). The latter section was not modified by the legislation in any way, and the legislation does not purport to take away charitable status from a corporation which had already acquired it. Insofar as this case is concerned, therefore, Section 501(e) is irrelevant.

384 F.Supp. at 780, 781.

A federal district court in *Hospital Central Service Association v. United States*, 77–2 U.S.T.C., P 9601, 40 A.F.T.R.2d 77–5646, accepted Judge Dillin's analysis without further comment.

Defendant nonetheless argues that *United Hospital* and *Hospital Central* are distinguishable from the instant case in that those cases held exempt laundry service organizations incorporated before the enactment of Section 501(e). This argument is not persuasive for two reasons. First, al-

though the organizations were incorporated before 1968, they were granted a refund on taxes paid out after Section 501(e) was fully in effect (1971 for *United Hospital* and 1974 for *Hospital Central*). Second, it appears that Judge Dillin in *United Hospital* referred to the 1964 date of incorporation simply to illustrate his point that Section 501(c)(3) operated independently of Section 501(e) in defining various exemptions. Certainly, the holding in *United Hospital* that Section 501(e) enlarged rather than restricted the exemptions already afforded by Section 501(c) did not depend upon the court's observation that the laundry service in question was incorporated before 1968.

I hold, therefore, that Section 501(e) does not preclude Metropolitan from receiving a general charitable exemption under 501(c)(3) provided it meets the qualifications for exemption under that section. It is this issue which is next discussed.

## II.

▮▮▮ Plaintiff contends that it is a charitable organization within the meaning of Section 501(c)(3), and, therefore, entitled to a Section 501(a) tax exemption. Defendant counters that since plaintiff offers services normally provided by commercial rather than charitable organizations it cannot receive a charitable exemption.

That plaintiff provides a service frequently offered by commercial establishments does not preclude its classification as a charitable organization. Nursing homes, hospitals and service organizations operated as charities frequently compete vigorously with their commercial counterparts for the same business. Plaintiff's organization as a laundry service, therefore, does not preclude it from receiving a charitable exemption provided it can meet the somewhat amorphous definitional requirements:

> The term "charitable" is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax-exempt purposes which may fall within the broad outlines of "charity" as developed

by judicial decisions. Such term includes: Relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes . . . . .

Treas.Reg. § 1.501(c)(3)–1(d)(2).

In determining whether a particular organization falls within this definition courts consider both the general policy behind Section 501(c)(3) and those pertinent factors which, in a given case, suggest that the organization is charitable:

> Usually, provisions allowing for exemptions from taxation are strictly construed against those claiming such exemptions. *Conference of Major Religious Superiors of Women, Inc. v. District of Columbia*, 121 U.S.App.D.C. 171, 348 F.2d 783 (1965). But in cases involving charitable purposes, provisions giving tax exemptions are liberally construed. *American Institute for Economic Research v. United States*, 302 F.2d 934, 157 Ct.Cl. 548 (1962), cert. den. 372 U.S. 976, 83 S.Ct. 1109, 10 L.Ed.2d 141, rehearing den. 373 U.S. 954, 83 S.Ct. 1677, 10 L.Ed.2d 708 (1963); *Harrison v. Barker Annuity Fund*, 90 F.2d 286 (7th Cir. 1937). Ambiguity of these provisions has been traditionally resolved against taxation. *C. F. Mueller Co. v. Commissioners*, 190 F.2d 120 (3 Cir. 1951). In determining the tax status of an organization, courts look to the predominant purpose for forming the organization and its manner of operations. *Passaic United Hebrew Burial Ass'n v. United States*, 216 F.Supp. 500 (D.N.J.1963). The organization's right to an exemption depends largely upon how its operations affect the public. *People's Educational Camp Society, Inc. v. Commissioner*, 331 F.2d 923 (2 Cir.), cert. den. 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964). The organization must exclusively perform essential public services. *Horace Heidt Foundation v. United States*, 170 F.Supp.

634, 145 Ct.Cl. 322 (1959). The fact that an organization produces income to retire its indebtedness does not disqualify it from being tax-exempt. *Shiffman v. Commissioner,* 32 T.C. 1073 (1959).

384 F.Supp. at 779.

I agree with Judge Dillin's analysis of the policy supporting Section 501(c)(3) and find the following factors in this case indicative of Metropolitan's charitable nature and purposes: (1) Metropolitan is governed by a Board of Trustees the members of which also serve on governing boards of the various participating hospitals. Consequently, hospital members collectively control and operate Metropolitan in their own interest; (2) All members receive a benefit from Metropolitan's centralized, standardized services, including reduced costs and increased floor space; (3) For profit hospitals are not permitted to participate in the cooperative and no profits (as that term is traditionally defined) are realized by Metropolitan; (4) Metropolitan provides a service which is essential to the proper functioning of its tax exempt members. Indeed, prior to the incorporation of Metropolitan each member hospital performed these services independently through "in-house" laundries; (5) The Articles of Incorporation of Metropolitan provide that upon its dissolution all proceeds shall be distributed to charitable organizations exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code.

As the courts held in *United Hospital* and *Hospital Central,* I find that a non-profit laundry cooperative organized such as Metropolitan is a charitable organization enti- tled to an exemption because of Sections 501(c)(3) and 501(a) of the Internal Revenue Code.

### III.

 Defendant also argues that plaintiff's motion for summary judgment should be denied because plaintiff is a feeder organization as defined in Section 502 of the Internal Revenue Code, and, therefore, not entitled to an exemption under Section 501(a). Section 502 provides:

(a) General rule.—An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt from taxation under section 501 on the ground that all of its profits are payable to one or more organizations exempt from taxation under section 501.

(b) Special rule.—For purposes of this section, the term "trade or business" shall not include—

(1) the deriving of rents which would be excluded under section 512(b)(3), if section 512 applied to the organization,

(2) any trade or business in which substantially all the work in carrying on such trade or business is performed for the organization without compensation, or

(3) any trade or business which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions.

See also Treas.Reg. § 1.502–1.[2]

In both *United Hospital* and *Hospital Central* it was held that cooperative, non-

---

**2.** § 1.502–1 Feeder organizations

(a) In the case of an organization operated for the primary purpose of carrying on a trade or business for profit, exemption is not allowed under section 501 on the ground that all the profits of such organization are payable to one or more organizations exempt from taxation under section 501. In determining the primary purpose of an organization, all the circumstances must be considered, including the size and extent of the trade or business and the size and extent of those activities of such organization which are specified in the applicable paragraph of section 501.

(b) If a subsidiary organization of a tax-exempt organization would itself be exempt on the ground that its activities are an integral part of the exempt activities of the parent organization, its exemption will not be lost because, as a matter of accounting between the two organizations, the subsidiary derives a profit from its dealings with its parent organization, for example, a subsidiary organization which is operated for the sole purpose of furnishing electric power used by its parent organization, a tax-exempt educational organization, in carrying on its educational activities. However, the subsidiary organization is not exempt from tax if it is operated for the primary pur-

profit laundry services (like Metropolitan) were not feeder organizations within the meaning of Section 502. I agree that a hospital laundry service organization which realizes no profit and operates exclusively for the benefit of tax exempt hospitals cannot reasonably be defined as a trade or business operated for profit under Section 502. Moreover, according to Treas.Reg. 1.502–1 those businesses denied exempt status under Section 502 must be "unrelated" trades or businesses to the charities they feed. Since a laundry service is directly related to the successful functioning of a hospital, I cannot find that Metropolitan falls within the definition of non-exempt services under Section 502.

An additional issue merits discussion here. In *United Hospital* the court placed weight upon its finding that the hospital laundry service involved there did not compete with commercial laundries in the area. This factor played a part in the court's finding that the laundry service was a charitable organization within the meaning of Section 501(c)(3); it also appears to have played a part in the court's refusal to classify the laundry as a feeder organization under Section 502. In *Hospital Central* the defendant did not contest the plaintiff's representation that the laundry service there performed such a unique function that it did not compete with commercial laundries in the area. The court, therefore, found it unnecessary to analyze the significance or insignificance of the no competition factor.

In this case plaintiff contends, in affidavits in support of its motion for summary judgment, that Metropolitan provides unique laundry services not offered by commercial establishments. Defendant, in opposing affidavits, states that commercial laundries in the Detroit area provide services "similar" to those offered by Metropolitan and actively compete with Metropolitan for hospital laundry business.

If a charitable organization was defined in part by its failure to compete with profitable businesses it would be necessary to hear evidence relating to the competition question raised by the parties in their affidavits. Similarly, if non-competition with profitable trades or businesses was a prerequisite to exclusion from the definition set forth in Section 502, I would hear evidence on this issue. However, as stated above, the competitive or non-competitive nature of an organization neither restricts nor expands its definition as a charity. Furthermore, a cursory study of Section 502 and Treas.Reg. 1.502–1 suggest that the competition factor is also irrelevant in defining an organization as a feeder. Defendant may be correct in suggesting that the general purpose behind the enactment of Section 502 was to restrict competition between charitable and profitable enterprises. Nevertheless, defendant cannot ask this court to classify an organization as a feeder to further Congress' purposes where, as here, the organization in question does not meet the clear definitional language in the statute itself.

pose of carrying on a trade or business which would be an unrelated trade or business (that is, unrelated to exempt activities) if regularly carried on by the parent organization. For example, if a subsidiary organization is operated primarily for the purpose of furnishing electric power to consumers other than its parent organization (and the parent's tax-exempt subsidiary organizations), it is not exempt since such business would be an unrelated trade or business if regularly carried on by the parent organization. Similarly, if the organization is owned by several unrelated exempt organizations, and is operated for the purpose of furnishing electric power to each of them, it is not exempt since such business would be an unrelated trade or business if regularly carried on

by any one of the tax-exempt organizations. For purposes of this paragraph, organizations are related only if they consist of—

(1) A parent organization and one or more of its subsidiary organizations; or

(2) Subsidiary organizations having a common parent organization.

An exempt organization is not related to another exempt organization merely because they both engage in the same type of exempt activities.

(c) In certain cases an organization which carries on a trade or business for profit but is not operated for the primary purpose of carrying on such trade or business is subject to the tax imposed under section 511 on its unrelated business taxable income.

I find, therefore, that whether Metropolitan competes with commercial laundries is irrelevant to the holding of this court. Accordingly, summary judgment for the plaintiff is granted. An appropriate order is entered contemporaneously herewith.