**METROPOLITAN DETROIT AREA HOSPITAL SERVICES, INC.,**
Plaintiff–Appellee,

v.

**UNITED STATES of America,**
Defendant–Appellant.

Nos. 78–1205, 78–1218.

United States Court of Appeals,
Sixth Circuit.

Argued April 1, 1980.

Decided Nov. 4, 1980.

James K. Robinson, U. S. Atty., Detroit, Mich., M. Carr Ferguson, Asst. Atty. Gen., U. S. Dept. of Justice, Gilbert E. Andrews, Leonard J. Henzke, Jr., David English Carmack, Washington, D. C., for defendant–appellant.

Stevan Uzelac, John J. Collins, Miller, Canfield, Paddock & Stone, Detroit, Mich., for plaintiff–appellee.

Jay H. Hedgepeth, William J. Fitzpatrick, Chicago, Ill., for amicus curiae, American Hospital Association.

Before KEITH and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

KEITH, Circuit Judge.

Plaintiff Metropolitan Detroit Area Hospital Services, Inc. (Metropolitan) is a non–profit corporation owned and operated cooperatively by six Detroit area hospitals. Its purpose is to provide laundry services to member hospitals. Prior to the incorporation of Metropolitan on June 15, 1970, each participating hospital maintained separate "in–house" laundry facilities to furnish the services now provided by Metropolitan. In essence, the hospitals pooled their resources to form the laundry cooperative, and now pay to Metropolitan a rate designed to cover the laundry's costs and overhead, including debt retirement.

At present, Metropolitan provides laundry service only.[1] Metropolitan is controlled by a Board of Trustees, the members of which are appointed by the governing bodies of the participating hospitals. Each hospital appoints two members to Metropolitan's Board. Each participating hospital is exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Each hospital is publically owned and operated as a municipal corporation. Metropolitan is exempt from Michigan *ad valorem* personal and real property taxes and from Michigan sales tax. M.C.L.A. 211.7; *Hospital Purchasing Services v. City of Hastings*, 11 Mich.App. 500, 161 N.W.2d 759 (1968).

In 1973, Metropolitan paid $4,811.00 in federal income taxes. The pleadings do not show what amount, if any, Metropolitan paid in income taxes for 1974. In 1975, it paid $39,822.00. On April 17, 1975, Metropolitan filed with the Internal Revenue Service an application for recognition of exemption, asserting that it was a charitable organization under Internal Revenue Code 26 U.S.C. § 501(c)(3) and, thus, entitled to federal income tax exemption under § 501(a) of the Code. The IRS denied Metropolitan the exemption on September 1, 1976 and on February 11, 1977, informed Metropolitan that it had found insufficient grounds upon which to reduce Metropolitan's tax liability.

On April 1, 1977, Metropolitan filed its complaint in the district court against the IRS to recover $44,633.00. The basis for the refund claim was that Metropolitan was entitled to a tax–exempt status. The district court granted summary judgment, pursuant to Fed.R.Civ.P. 56 in favor of Metropolitan. The United States brought this appeal.

The stated facts are undisputed by the parties. The only question demanding resolution is whether, under these facts, the plaintiff is entitled to a federal income tax exemption under Section 501(a) because of a tax exempt status under Section 501(c)(3) of the Internal Revenue Code.

---

1. However, the Articles of Incorporation allow for a significant expansion of hospital services.

## I.

There are two Code provisions that are relevant for our discussion of this tax problem. Section 501(c)(3) grants a tax exemption to all organizations that are:

"organized and operated exclusively for religious, charitable, scientific or educational purposes . . . [and] no part of the earnings of which inure to the benefit of any private shareholder or individual." I.R.C. § 501(c)(3).[2]

Metropolitan claims that it is organized for a charitable purpose, and therefore is exempt under this section of the Code.

Section 501(e) is the second provision that we must consider. Section 501(e) specifically addresses the tax–exempt status of those cooperatives formed by § 501(c)(3) tax–exempt hospitals. The government contends that § 501(e) is the controlling statutory section. Our goal is to ascertain the intent of Congress in enacting § 501(e).

Section 501(e) provides in pertinent part:

(e) Cooperative hospital, services organizations–for purposes of this title, an organization shall be treated as an organization organized and operated exclusively for charitable purposes, if–

(1) such organization is organized and operated solely–

(A) to perform on a centralized basis, one or more of the following of services which, if performed on its own behalf by a hospital which is an organization described in Subsection (c)(3), and would be exempt from taxation under Subsection (a), would constitute activities in exercising or performing the purpose or function constituting the basis for its exemption: data processing, purchasing, warehousing, billing and collection, food, clinical, industrial engineering, laboratory, printing, communications, record center, and personnel (including selection, testing, training, and education of personnel) services; and

(B) to perform such services solely for two or more hospitals each of which is–

(i) an organization described in Subsection (c)(3) which is exempt from taxation under Subsection (a),

(ii) a constituent part of an organization described in Subsection (c)(3) which is exempt from taxation under Subsection (a) and which, if organized and operated as a separate entity, would constitute an organization described in Subsection (c)(3), or

(iii) owned and operated by the United States, a state, the District of Columbia, or a possession of the United States, or a political subdivision or an agency or instrumentality of any of the foregoing;

(2) such organization is organized and operated on a cooperative basis and allocates or pays, within 8½ months after the close of its taxable year, all net earnings to patrons on the basis of services performed for them; and

(3) if such organization has capital stock, all of such stock outstanding is owned by its patrons.

For purposes of this title, any organization which, by reason of the preceding sentence, is an organization described in Subsection (c)(3) and exempt from taxation under Subsection (a) shall be treated as a hospital and as an organization referred to in Section 170(b)(1)(A)(iii).

The district court found for the taxpayer, holding that Metropolitan met the requirements of § 501(c)(3) as a charitable organization, and thus was entitled to tax exempt status under Section 501(a). In answering the question of whether Metropolitan was a § 501(c)(3) organization, the district court used a three–pronged analysis. First, the court inquired whether the taxpayer was entitled to claim a tax exemption directly under 501(c)(3) or whether it was limited to Section 501(e). Assuming Metropolitan was so entitled, the court next inquired whether

**2.** Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.

it was in fact a § 501(c)(3) organization? And finally, the court inquired whether § 502, the "feeder provision," could block any exemption to which Metropolitan might otherwise have been entitled? The government appeals from the holding that Metropolitan is a § 501(c)(3) organization, and argues that § 501(e) is the controlling statutory provision.

On appeal the question before us is whether § 501(e) specifically limits the type of hospital cooperative services that may be treated as a tax exempt § 501(c)(3) organization. If answered in the affirmative, our inquiry is complete. A cursory reading of 501(e) reveals that laundry services are absent from the inventory of hospital cooperatives singled out for tax exempt treatment. From this one might infer that Congress intended to exclude laundry services from tax exempt treatment.[3] However, some lower courts have not so interpreted this omission.[4] Rather, Section 501(e) has been held to be a "safe harbor" for those hospital services so catalogued.[5] Under this view, the fact that laundry services are outside § 501(e) is irrelevant.

This interpretation enables a hospital laundry cooperative to apply for and receive a § 501(c)(3) exemption under the theory that clean laundry is integrally related to the delivery of health services. In other words, clean laundry is indispensable to the proper functioning of any hospital providing modern health care. The district court specifically found that Metropolitan, the non–profit laundry cooperative, satisfied the requirements for § 501(c)(3) charitable organization and was therefore entitled to a tax exemption.

In determining that § 501(c)(3) of the Code applied to Metropolitan, the district court enumerated the following factors indicative of Metropolitan's charitable nature and purposes:

(1) Metropolitan is governed by a Board of Trustees, the members of which also serve on governing boards of the various participating hospitals. Consequently, hospital members collectively control and operate Metropolitan *in their own interest*; (2) All members receive a benefit from Metropolitan's centralized, standardized services, including reduced costs and increased floor space; (3) For–profit hospitals are not permitted to participate in the cooperative *and no profits (as that term is traditionally defined)* are realized by Metropolitan; (4) Metropolitan provides a service which is essential to the proper functioning of its tax exempt members. Indeed, prior to the in-

---

**3.** *See* Rev.Rul. 69–160 G.B. 1969–I, 147; Rev. Rul. 69–633. In pertinent part, Revenue Ruling 69–633 states:

Situation 1: A number of hospitals exempt from federal income tax under Section 501(c)(3) of the Code formed a laundry service organization. The organization was organized and operated on a cooperative basis to serve only the hospitals that organized it. All net earnings are required to be allocated or paid to patrons on the basis of services performed for them.

Question 1: Can the organization qualify for exemption from Federal Income Tax as a cooperative hospital service organization under Section 501(c)(3) of the Code by reason of Section 501(e)?

Answer: In order to qualify as a cooperative hospital service organization under the provisions of Section 501(e) of the Code, an organization must be organized and operated solely to perform one or more of the services specified in Section 501(e)(1)(A) of the Code. Since laundry services are not one of the services specified in that section, the organi-

zation does not meet the requirements of Section 501(e) of the Code, and thus is not exempt from Federal income tax under Section 501(c)(3). See Rev.Rul. 69–160, G.B. 1969–1, 147.

See also H.R.Rep. No. 1533, 90th Cong., 2d Sess. 43 (1968), U.S.Code Cong. & Admin.News 1968, p. 2341; Committee of Conference on H.R. 15414, 90th Cong., 2d Sess. Revenue and Expenditures Control Act of 1968. Explanation of the Bill H.R. 15414. As agreed to in Conference 20 (Comm.Print 1968).

**4.** *See, e. g., Community Hospital Services, Inc. v. United States*, 79 U.S.R.C. § 9301 (E.D.Mich. 1979); *Hospital Central Services Association v. United States*, 77–2, U.S.T.C. § 9601 (W.D. Wash.1977); *Hospital Bureau of Standards and Supplies, Inc. v. United States*, 158 F.Supp. 560, 141 Ct.Cl. 91 (1958).

**5.** *See Metropolitan Detroit Area Hospital Services, Inc. v. United States*, 445 F.Supp. 857, 860 (E.D.Mich.1978).

corporation of Metropolitan each member hospital performed these services independently through "in–house" laundries; (5) The Articles of Incorporation of Metropolitan provide that upon its dissolution all proceeds shall be distributed to charitable organizations exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code.[6]

Apparently the lower court was persuaded that the above factors brought Metropolitan within the charitable purpose rubric of § 501(c)(3). The twin findings by the district court that 501(e) was meant to be only a "safe harbor" for hospital cooperatives and that this laundry was a charitable organization constitute the basis for the holding that Metropolitan is entitled to an exemption under 501(a).

 Our examination of the legislative history of Section 501(e) compels us to reverse the district court.[7] We believe that 501(e) was intended by Congress to be a definitive inventory rather than merely a descriptive list of hospital cooperatives. Thus, we hold that the omission of laundry services from 501(e) defeats Metropolitan's claim for tax exempt status.

In 1968, the Senate drafted an amendment to the Tax Adjustment Bill of 1968 which proposed to treat the majority of those organizations formed by tax exempt hospitals as charitable organizations.[8] Under this amendment, laundry services would have been included as a charitable organization. However, the House did not pass this all–encompassing amendment, and the matter had to be resolved by a Conference Committee. A substitute amendment endorsed by the Conference Committee was ultimately passed by Congress. The report from the Conference Committee reads:

The new subsection *does not grant tax exempt status* if the hospital service organization performs any services other than those specified in the new subsection (for example, laundry services), or performs any services for any person or organization other than a tax exempt hospital. H.R.Rep. No. 1533, 90th Cong., 2d Sess. 43 (1968) (emphasis added).

Moreover, the statements of Congressional leaders made interpreting the Conference Committee report eliminate any ambiguity concerning the status of laundry services. For example, the Honorable George A. Smathers, the ranking member of the Senate Committee on Finance stated:

"The conferees agreed to the Senate provision . . . but limited the exemption to a joint enterprise which is organized and operated solely to perform data processing, purchasing, warehousing, billing and collection, food, industrial engineering, laboratory, printing, communications or personnel functions for hospitals. 114 Cong.Rec. § 7480 (1968) (remarks of Sen. Smathers) *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2422, 2427.

 It is an elementary rule of statutory construction that a specific provision controls when the same subject matter is addressed by a more general provision.[9] Appellee contends that Metropolitan qualifies for 501(c)(3) treatment on its own merits, but to hold that a hospital cooperative can qualify under 501(c)(3) notwithstanding the more specific language of 501(e) would be to attribute to Congress the passing of a superfluous statute. Therefore, we find that a tax exemption is available for a cooperative under 501(c)(3) only if it is one of the cooperatives listed in 501(e).

---

6. District Court's Memorandum at *Metropolitan Detroit Area Hospital Services, Inc. v. United States*, 445 F.Supp. 857, 862 (E.D.Mich. 1978).

7. See n. 3 *supra*.

8. Moreover, the Tax Reform Act of 1976, P.L. 94–455, 90 Stat. 1520, contained an amendment to Section 501(e) which would have included laundry services within the services specified in

Section 501(e). It was deleted from the Tax Reform Act on the floor of the Senate. *See* 122 Cong.Rec. 25915 (1976).

9. "[I]t is familiar law that a specific statute controls over a general one without regard to priority of enactment." *Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72 (1961). *See also Nitzberg v. Commissioner*, 580 F.2d 357 (9th Cir. 1978).

Congress has restricted the proliferation of hospital cooperatives by specifically naming the cooperatives entitled to receive 501(c)(3) treatment. Laundry cooperatives were not so favored. As the government aptly observes, granting mutual laundry organizations exemptions under § 501(c)(3) permits a greater or more substantial tax advantage than that provided § 501(e) shared service organizations.[10] This would be contrary to Congressional intent to withhold even the more limited § 501(e) benefits from them. The conclusion seems inescapable that Congress has determined that mutual laundries should not be treated as an organization "organized and operated exclusively for charitable purposes."

We find that § 501(e) precludes Metropolitan from being considered on its own merits as a § 501(c)(3) charitable organization. Section 501(e) states that an organization under 501(e) "shall be treated" as an organization organized and operated exclusively for charitable purposes. Implicit in the wording of the statute itself is the idea that such cooperatives are not themselves "organizations" organized exclusively for charitable purposes,[11] although Congress did chose to have certain cooperatives treated as though they were so organized and oper-

ated. We believe it is unfortunate that § 501(e) acts as a disincentive for the sharing, among non–profit hospitals, of laundry and other necessary costs, but this policy decision to exclude laundry service cooperatives from tax exempt treatment is well within the sphere of legislative prerogative. Congress might well wish to reconsider this decision.

We are not alone in concluding that the legislative intent in excluding laundry services manifested a specific Congressional purpose. Recently the Third Circuit in *HCSC–Laundry v. United States*, 624 F.2d 428 (3rd Cir. 1980) held that the "legislative history supports the Internal Revenue Service's position that the statute reflects an explicit manifestation of legislative judgment and purpose not to *"afford cooperative hospital laundries tax exempt status."* *Id.* at 434 (emphasis supplied).[12]

For the reasons stated above, the judgment of the district court is reversed. Each party is to bear its own costs.

---

**10.** For example if a § 501(c)(3) organization, in addition to performing the function constituting the basis for its exemption, regularly carries on a "trade or business ... not substantially related to its charitable function," it will not lose its exemption but rather will be taxed on unrelated business income under § 511. However, the § 501(e) organization which regularly carries on a business will not be able to retain its exemption and be taxed only on the unrelated business income. Instead, it will be in danger of not qualifying for the exemption. Code § 513(e) gives a two–prong test for the imposition of the unrelated business income tax: a business activity which (1) regularly carried on and (2) not substantially related to the exempt purposes of the organization. *See also* Rev. Rul. 69–160, 1969–1. Cum.Bull. 147.

**11.** *See generally*, Tuthill, *Qualifying as a Tax Exempt Cooperative Hospital Service Organization*, 50 Notre Dame Lawyer 448 (1975).

**12.** The Ninth Circuit also adopted this position in a *per curiam* opinion:

A group of charitable § 501(2)(3) hospitals may jointly create and own a tax–exempt entity under § 501(e)(1)(A) to perform certain functions: e. g. computer service, purchasing, warehousing, laboratory, printing, billing and collecting, and other services listed in § 501(e)(1)(A) of the Code. The issue is whether, under § 501(c)(3), the hospitals may create tax–exempt entities to perform services not listed in § 501(e)(1)(A).

After a careful examination of the legislative history of § 501(e)(1)(A) and of established legal principles which we need not repeat here, the Third Circuit held that Congress had intentionally omitted laundry services from the list of commercial services for which charitable hospitals could form jointly–owned entities that would be tax exempt.

Whether the legislative decision to favor the commercial laundry industry by removing a tax advantage from competitors was a wise or equitable decision is obviously not a judicial question. On the only judicial question–the meaning of the tax law–we agree with the Third Circuit for the reasons stated in its opinion.

*Hospital Central Services, Assoc. v. United States of America*, 623 F.2d 611 (9th Cir. 1980).