**HOSPITAL BUREAU OF STANDARDS AND SUPPLIES, Incorporated,**

v.

**UNITED STATES.**

No. 478–54.

United States Court of Claims.
Jan. 15, 1958.

Melber Chambers, New York City, for plaintiff. Ralph K. Smith, Jr., New York City, was on the brief.

John A. Rees, Washington, D. C., with whom was Acting Asst. Atty. Gen. John N. Stull, for defendant. James P. Garland, Washington, D. C., was on the brief.

JONES, Chief Judge.

The Hospital Bureau of Standards and Supplies, Incorporated, brings this action to recover Federal income taxes paid by it for the calendar years 1952 and 1953. Exemption from such taxes is claimed by the plaintiff under the provisions of section 101(6) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 101(6). That portion of section 101(6) relevant to a determination of the issue here presented provides a tax exemption for "Corporations, * * * organized and operated exclusively for * * * charitable, * * purposes, * * *."[1] The Government challenges the assertion that plaintiff's activities were exclusively charitable in nature. It is further argued by the Government that should the plaintiff be designated a charitable organization it has, nevertheless, failed to sustain the burden of proving that it was so organized and operated during the years in question.

The plaintiff was incorporated under the Membership Corporations Law of the State of New York, McKinney's Consol. Laws, c. 35, in 1934. Since that time, its principal place of business has been in the city of New York. The by-laws of the plaintiff, set forth in finding 4, provide:

"Section 1. Any hospital or similar institution not conducted for

1. § 101. Exemption from tax on corporations

* * * * *

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *"

profit, and engaged in whole or in part in charitable work, is eligible to membership in this Corporation as an institutional member."

Findings 5 and 8 indicate that plaintiff was established as a successor to an organization of a similar name. Twelve directors, each residing at a different hospital, were named in plaintiff's certificate of incorporation. The certificate also specified that the plaintiff was not organized for "pecuniary profit."

To implement its express purposes, quoted in finding 5, the plaintiff initiates purchasing, or "jobbing," arrangements with various suppliers, whereby the member organizations can purchase hospital supplies as a group and thus realize savings not possible under individual purchases. Under this plan the merchandise is shipped directly to the hospitals but the invoices are sent to the plaintiff. To take advantage of discount savings, the plaintiff promptly pays the invoices and later collects from the members which have ordered and received the supplies. Rather than permit release of information as to net prices and thereby create friction between the plaintiff and its suppliers and between the suppliers and their competitors, the plaintiff adopted a policy in 1945 of billing its member hospitals at a higher price than that paid to the suppliers. The excesses resulting from collections from members, known as "patronage refunds," are credited to them, and they receive a credit memo or check at the end of each quarter.

In addition, the plaintiff maintains a research department to establish uniform standards as to the quality and price of supplies ordinarily used by the member institutions. Laboratory and service tests are conducted which frequently result in improved economy and use of materials. This information is passed along to the member hospitals to be used in selecting the items they customarily purchase. Material on the conservation of hospital equipment is also available to the members. Special technical consultant service is offered by the plaintiff. In addition to its publications, the plaintiff also maintains contact with its members through field representatives who make personal calls at member hospitals to discuss problems related to the plaintiff's services.

The plaintiff derives an income from dues paid by its member institutions, from cash discounts secured through prompt payment to suppliers, and from a service charge on all "jobbing" items. Income in excess of operating expenses is retained in a revolving fund for purchases for members. Being a membership corporation, the plaintiff has no capital stock, has no stockholders, and pays no interest or dividends of any kind. The executive director is the only officer receiving a salary from the plaintiff corporation, and only those employees who are actually and wholly engaged in the daily operation of the plaintiff are compensated for their services. The membership of the Hospital Bureau of Standards and Supplies, Incorporated, consisted of 207 institutions in the year 1952.

Unquestionably the technical analysis and purchase of hospital supplies from suppliers are necessary and indispensable to the operations of the plaintiff's member hospitals. It was with a view to provide this highly specialized service, that the plaintiff was incorporated. We have confirmed in finding 16 that plaintiff's activities effected savings to its member institutions. Where the taxpayer is engaged in a business enterprise that bears a close and intimate relationship to the functioning of a tax-exempt educational institution, it has been held that the taxpayer is entitled to an exemption as an educational institution within the meaning of section 101(6) of the Internal Revenue Code of 1939. Squire v. Students Book Corporation, 9 Cir., 191 F.2d 1018. The facts in that case overturn the Government's argument that the Hospital Bureau of Standards and Supplies, Incorporated, was not an integral part of the operations of its hospital members since "it performed no hospital services." There the taxpayer was a corporation organized to operate a bookstore and res-

taurant on the campus of a state college, and whose profits were to be utilized primarily in constructing a student union building which was to become state property. Squire v. Students Book Corporation, supra. The fact that the taxpayer did not render "educational services" was not controlling in that decision. The Tax Court has likewise extended recognition to the view that the activities of a taxpayer need not involve "educational services," to the extent of providing formal instruction under the supervision of a regular faculty, as the Government's argument would lead us to believe, in order to qualify for exemption as an educational institution under the provision of section 101(6) of the Internal Revenue Code of 1939. Forest Press, Inc., v. Commissioner of Internal Revenue, 22 T.C. 265. Furthermore, the fact that the taxpayer claiming an exemption realizes a profit during the taxable year is not sufficient in itself for disallowing the exemption. Forest Press, Inc., v. Commissioner of Internal Revenue, supra.

We question the applicability of Treasury Regulations 111, § 29.101–3(b), sub-

sequently incorporated as § 39.101–2(b) of Regulations 118 to a membership corporation where the members are engaged in related charitable activities.[2] Here the plaintiff is composed entirely of member hospitals. Its services are available only to the member institutions. To construe the Regulations as denying exemption in this particular case would require distortion of the language employed.

■■ Whether the plaintiff loses its exemption as a result of the "feeder organization" amendment of the Revenue Act of 1950, section 301(b) involves a question of fact as to whether it was an "organization operated for the primary purpose of carrying on a trade or business for profit" during the years in question.[3] The nature of plaintiff's activities, essentially involving the evaluation and purchase of necessary hospital supplies for its member organizations, and its corporate and financial structure, a membership corporation without capital stock and stockholders, paying neither interest nor dividends, compensating only its executive director and employees engaged

**2.** Treasury Regulations 111, § 29.101–3 (b), promulgated August 4, 1952, provides in part as follows:

* * * If a subsidiary organization of a tax-exempt organization would itself be exempt on the ground that its activities are an integral part of the exempt activities of the parent organization, its exemption will not be lost because, as a matter of accounting between the two organizations, the subsidiary derives a profit from its dealings with its parent organization, for example, a subsidiary organization which is operated for the sole purpose of furnishing electric power used by its parent organization, a tax-exempt educational organization, in carrying on its educational activities. However, the subsidiary organization is not exempt from tax if it is operated for the primary purpose of carrying on a trade or business which would be an unrelated trade or business (that is, unrelated to exempt activities) if regularly carried on by the parent organization. For example, if a subsidiary organization is operated primarily for the purpose of furnishing electric power to consumers other than its parent organization (and the parent's tax-exempt sub-

sidiary organization), it is not exempt since such business would be an unrelated trade or business if regularly carried on by the parent organization. Similarly, if the subsidiary is owned by several unrelated exempt organizations, and is operated for the purpose of furnishing electric power to each of them, it is not exempt since such business would be an unrelated trade or business if regularly carried on by any one of the tax-exempt organizations.

**3.** The Revenue Act of 1950, c. 994, 64 Stat. 906, § 301(b) provides:

Feeder Organizations.—Section 101 is hereby amended by adding at the end thereof the following paragraph:

"An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt under any paragraph of this section on the ground that all of its profits are payable to one or more organizations exempt under this section from taxation. For the purposes of this paragraph the term 'trade or business' shall not include the rental by an organization of its real property (including personal property leased with the real property)."

in its daily operations, with its income in excess of operating expenses returned to its members in the form of "patronage refunds" or retained in a revolving fund to be used exclusively in purchasing items for members, are not the *indicia* of an organization operating for the primary purpose of carrying on a trade or business for profit. At most, the plaintiff was performing a function which each of its member hospitals would have to assume were it not for the plaintiff's existence. Our findings 11 and 12 that plaintiff executed Federal income tax returns for the calendar years 1952 and 1953, reporting net incomes of $11,625.49 and $10,362.17, respectively, are to be considered, of course, but they are not decisive on this issue. Forest Press, Inc., v. Commissioner of Internal Revenue, supra. We are here not dealing with a business carried on for profit, with the profit directed to charity, as we considered in the case of Dillingham Transportation Building v. United States, Ct.Cl., 146 F.Supp. 953, and Knapp Brothers Shoe Manufacturing Corporation v. United States, 142 F.Supp. 899, 135 Ct. Cl. 797. When all phases of the plaintiff's activities during the taxable years are taken into account, we feel compelled to hold that it was not an organization operating for the primary purpose of carrying on a trade or business for profit.

The Government contests our finding that plaintiff was comprised entirely of tax-exempt, charitable hospital members. The case was submitted on stipulation. Statements in the record by the Commissioner of Internal Revenue refer to the members of plaintiff as having " * * * established an exempt status for Federal income tax purposes as charitable institutions," and as being "the several charitable organizations that constitute your [plaintiff's] membership." The record contains other joint exhibits wherein the plaintiff states that it is composed of tax-exempt, charitable institutions. There is nothing in the record to contradict this evidence. We believe that the plaintiff has sustained its burden of proof in this respect.

Plaintiff is entitled to recover, together with interest thereon as provided by law, and judgment is entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

REED, Justice (ret.), sitting by designation, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.