HOSPITAL PURCHASING SERVICE OF MICHIGAN
*v.* CITY OF HASTINGS.

1. TAXATION—EXEMPTION—CHARITIES.
   Real and personal property of nonprofit corporation, providing
   hospital purchasing service is entitled to exemption from
   taxes as a charitable institution where corporation's member-
   ship is restricted to tax-exempt hospitals, its sole function is
   purchasing medical supplies for distribution to member hos-
   pitals, and the use of its property is clearly related to chari-
   table object of member hospitals (CLS 1961, § 211.7, as
   amended by PA 1963, No 148; and § 211.9, as amended by
   PA 1964, No 275).

2. EVIDENCE—COMMON KNOWLEDGE—MEDICAL CARE COSTS.
   It is common knowledge that, as medical care has become in-
   creasingly more sophisticated, costs have arisen sharply.

3. TAXATION—CONSTRUCTION OF STATUTE—EXEMPTION—HOSPITALS.
   Statutory provisions exempting hospitals from taxation when
   they act individually should not be construed to subject them
   to taxation when they act in concert (CLS 1961, § 211.7, as
   amended by PA 1963, No 148; and § 211.9, as amended by
   PA 1964, No 275).

4. SAME—EXEMPTION—DISQUALIFICATION—COMMERCIAL USE.
   Portion of premises owned by nonprofit corporation providing
   hospital purchasing service which was leased to secretary of
   State for use as a drivers' license bureau *held*, subject to as-
   sessment for taxes under statute which exempts property of
   charitable organizations only when occupied by organizations
   solely for purposes for which they were incorporated (CLS
   1961, § 211.7, as amended by PA 1963, No 148).

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 51 Am Jur, Taxation § 633 *et seq.*
[2] 29 Am Jur 2d, Evidence §§ 23, 82.
[4–6] 51 Am Jur, Taxation § 638.
[7] 51 Am Jur, Taxation § 524.
[8] 5 Am Jur 2d, Appeal and Error § 1009.

5. SAME—EXEMPTION—DISQUALIFICATION—COMMERCIAL USE.

Fact that a portion of premises claimed to be tax exempt because owned by a charitable institution were leased to secretary of State, thereby yielding income, does not disqualify plaintiff charitable institution's entire building from tax exemption, but only that portion removed from use in charitable pursuits by the creation of the leasehold (CLS 1961, § 211.7, as amended by PA 1963, No 148).

6. SAME—EXEMPTION—CHARITIES.

That corporation's activities might be in competition with private noncharitable corporations and that such activities would only to a slight degree benefit citizens of city in which corporation had headquarters are not controlling factors in determination of whether corporation qualifies for tax exemption of charitable corporations (CLS 1961, § 211.7, as amended by PA 1963, No 148; and § 211.9, as amended by PA 1964, No 275).

7. SAME—CONSTRUCTION OF STATUTES—EXEMPTION.

Generally, statutes granting tax exemption should be strictly construed.

8. COSTS—TAX EXEMPTION—PUBLIC QUESTION.

No costs are allowed on appeal from judgment that property of plaintiff charitable institutions had not qualified for tax exemption of charitable corporations, a public question being involved (CLS 1961, § 211.7, as amended by PA 1963, No 148; and § 211.9, as amended by PA 1964, No 275).

Appeal from Barry, McDonald (Archie D.), J. Submitted Division 3 January 9, 1968, at Grand Rapids. (Docket No. 3,046.) Decided May 29, 1968.

Complaint by Hospital Purchasing Service of Michigan, a Michigan nonprofit corporation, against City of Hastings, a municipal corporation, for refund of property taxes paid under protest. Judgment for defendant. Plaintiff appeals. Reversed.

*Philip H. Mitchell*, for plaintiff.

*Paul E. Siegel*, for defendant.

Neal E. Fitzgerald, J.    Plaintiff, Hospital Purchasing Service of Michigan, a nonprofit corporation organized to make more efficient the purchasing of supplies for its member hospitals in order to reduce the cost of hospital care, brings this action to recover real and personal property taxes paid under protest to the defendant city of Hastings. Plaintiff appeals the decision of the circuit court that its property does not qualify for exemption from taxation under the general property tax act, CLS 1961, § 211.7, as last amended by PA 1963, No 148 (Stat Ann 1965 Cum Supp § 7.7) and CLS 1961 § 211.9, as last amended by PA 1964, No 275 (Stat Ann 1965 Cum Supp § 7.9).

The city of Hastings, where the property in question is situate, assessed a tax on the building plaintiff purchased for the central operation of its service at 120 North Michigan avenue in the defendant city. The city likewise assessed plaintiff's personal property, consisting largely of the various hospital supplies stored in the headquarters building. After a denial of its appeal by the board of review of the defendant city, plaintiff brought proceedings before the State tax commission, seeking a declaration from the commission that its property qualified for exemption under the general property tax act, CLS 1961, § 211.7 and § 211.9, *supra.* The commission held hearings on November 22, 1965, and then, considering that the determination of the issue involved should be obtained in judicial proceedings, decided to deny plaintiff's appeal, suggesting that an action be brought under CL 1948, § 211.53, as amended by PA 1962, No 133 (Stat Ann 1968 Cum Supp § 7.97). Accordingly, plaintiff, on February 9, 1966, paid under protest to the city of Hastings the taxes assessed, $769.32 on its real property, and $705.20 on its personal property. Then plaintiff brought

this action in the circuit court for the county of Barry to recover the amounts paid. The circuit court, having heard testimony and argument on October 7, 1966, gave judgment for the defendant, deciding that the plaintiff corporation's property did not qualify for exemption from taxation under the general property tax act, CLS 1961, § 211.7 and § 211.9, *supra.*

Plaintiff is a membership nonprofit corporation organized as a successor to a pilot project originally financed by the Kellogg Foundation. These efforts were the fruit of a commission appointed by the governor of the State to study the needs of hospitals. The commission, in the "MacNerny report", strongly recommended the establishment of a central organization to provide a more efficient means of purchasing large quantities of hospital equipment and supplies.

The plaintiff argues its property should enjoy a tax-exempt status under CLS 1961, § 211.7 and § 211.9, *supra,* because its services are rendered entirely for tax exempt hospitals, indisputably charitable institutions. We agree.

The relevant portions of section 7 of the statute provide:

"The following property shall be exempt from taxation:     *     *     *

"Such real estate as shall be owned and occupied by     *     *     * charitable     *     *     * institutions     *     *     * incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated.     *     *     * Also real estate, with the buildings and other property thereon, owned and occupied by any nonprofit trust and used for hospital or public health purposes." (CLS 1961, § 211.7 [Stat Ann 1968 Cum Supp § 7.7].)

Section 9 of the act has a like provision granting exemption to personal property.

We conclude that the plaintiff qualifies under these provisions of the statute. The plaintiff's corporate purpose is set forth in article II of its articles of incorporation:

"The purposes of this corporation are to engage in charitable, scientific, and educational activities within the meaning of § 501 (C) (3) of the internal revenue code of 1954, or as it may be subsequently amended, and in furtherance of this purpose to develop charitable, scientific and educational programs leading to the improvement of hospital administration, both in the internal operation of hospitals and in the procurement of supplies and equipment, and in such other areas as will assist hospitals and related institutions to provide better patient care at the lowest possible cost."

Article II likewise provides that, upon the dissolution of the corporation, all assets shall be distributed to the participating hospitals.

Article V of the plaintiff's articles of incorporation, regarding membership in the corporation, states:

"This corporation shall be organized on a nonstock basis. Membership in the corporation shall be limited to nonprofit health organizations interested in the objects of the association and which are exempt from taxation in accordance with the provisions of Section 501(C)(3) of the internal revenue code or amendments thereto, and to health organizations which are instrumentalities of government and exempt from taxation.

"The general scheme of financing this corporation is the collection of dues from members, the collection of service charges for services rendered to members, and the solicitation of gifts or grants for the furtherance of the charitable objectives of the corporation."

From these articles of incorporation, it appears clear to us that plaintiff's incorporators intended that their creation should be strictly charitable in its structure and operations. It has been incorporated and is being conducted solely for hospital purposes, and therefore we conclude that its property, both personal and real, should enjoy the exemption from taxation granted by the legislature in favor of charitable organizations in CLS 1961, § 211.7 and § 211.9, *supra*.

At present, the plaintiff serves approximately 100 hospitals, of which 70 are members of the corporation. Robert Stekel, executive director of Hospital Purchasing Service, testified that the operations are at present largely confined to the purchase, storage, and distribution of supplies to the member hospitals and to the various other hospitals subscribing to the plaintiff's services. The operations are paid for primarily by the dues and service charges contributed by the hospitals served. A slight mark-up is charged on the goods supplied in order to help defray the costs of operation. The deficits incurred during the first two years of operation were made up by charitable contributions and by funds carried over from the original grant of the Kellogg Foundation. A surplus of $662 earned during the fiscal year, April 1965 to April 1966, was used to expand the corporation's services. Since plaintiff is a membership corporation, there are no stockholders, and no dividends are or will be paid. The State department of revenue has granted plaintiff's operations exemption from the State sales tax.

Although plaintiff's operations up to the present have been largely restricted to the purchasing of general supplies because of limitations of financing, it is within the scope of its articles of incorporation that plaintiff's services may be expanded in the

future to include the cooperative purchasing of laboratory and X-ray services, iron lungs, and artificial kidney machines, cancer treatment equipment and other sophisticated equipment which it would not be within the means of small individual hospitals to acquire.

As quoted from the articles of incorporation, *supra,* only tax-exempt hospitals can qualify for membership in plaintiff. No one suggests that the purchasing department of any such member hospital should be singled out and subject to taxation. It is common knowledge that, as medical care has become increasingly more sophisticated, costs have risen sharply. We think it would be unwise to interpret the statutory provisions under scrutiny here so as to conclude that what is free from taxation when accomplished by hospitals individually, is suddenly subject to taxation when hospitals act in concert. Such an interpretation could have the effect of impeding and penalizing an imaginative effort designed to reduce the cost of hospital care.

We find a persuasive parallel to the reasoning we adopt here in *Hospital Bureau of Standards and Supplies, Incorporated,* v. *United States* (Ct of Claims, 1958), 158 F Supp 560, which involved a corporation very similar to the plaintiff corporation. It had been organized as a nonprofit membership corporation essentially to purchase supplies in large quantities for its member hospitals. The United States Court of Claims was called upon to determine if the corporation's income qualified for exemption from Federal income taxes under that provision of the internal revenue code, 26 USCA § 101(6), which provides a tax exemption for "corporations   *   *   *   organized and operated exclusively for   *   *   *   charitable   *   *   *   purposes." The court, in de-

ciding that the corporation did so qualify, adopted a rationale applicable here when it said:

"The nature of plaintiff's activities, essentially involving the evaluation and purchase of necessary hospital supplies for its member organizations, and its corporate and financial structure, a membership corporation without capital stock and stockholders, paying neither interest nor dividends, compensating only its executive director and employees engaged in its daily operations, with its income in excess of operating expenses returned to its members in the form of 'patronage refunds' or retained in a revolving fund to be used exclusively in purchasing items for members, are not the indicia of an organization operating for the primary purpose of carrying on a trade or business for profit. *At most, the plaintiff was performing a function which each of its member hospitals would have to assume were it not for the plaintiff's existence."* 158 F Supp 560, 563, 564.    (Emphasis supplied.)

The Michigan Supreme Court decisions in *Gull Lake Bible Conference Association* v. *Township of Ross* (1958), 351 Mich 269 and in *Oakwood Hospital Corporation* v. *State Tax Commission* (1965), 374 Mich 524, clarify the issue before us by the liberal interpretations the Court gave to the statutory provisions before us now.

In *Gull Lake, supra,* the Supreme Court affirmed a circuit court decision that tax-exempt status should be granted to a hotel building owned by the plaintiff Association and occupied by those attending the Bible Conference, even though those who resided in the building paid rent yielding an income to the Association.

In *Oakwood Hospital Corporation, supra,* the Supreme Court held that tax-exempt status should be granted to six single houses constructed by the

hospital adjacent to its premises to provide housing·
for interns and resident physicians, even though the
occupants of the hospital's houses paid rent yield-
ing an income to the hospital.[1]

In each of these Michigan cases, the use of the
buildings granted tax-exempt status was related to
the institution's qualifying charitable object of in-
corporation. Similarly, the use of plaintiff's build-
ing is plainly related to the indisputably charitable
object of plaintiff's member hospitals. Like the cor-
poration in *Hospital Bureau of Standards and Sup-
plies, Incorporated,* v. *United States, supra,* plaintiff
performs a function each of its member hospitals
would have to assume were it not for the plaintiff's
existence.

Approximately 1,600 square feet of plaintiff's
property have been leased to the secretary of State
and are being occupied as a drivers' license bureau.
We conclude that this part of the premises from
which plaintiff derives income should be subject to
the assessment of the defendant city. In this regard,
the wording of the statute poses some difficulty, for
section 7 provides that exemption from property
taxation shall be granted to "Such real estate as
shall be owned and occupied by * * * charitable
* * * institutions * * * incorporated under
the laws of this state with the buildings and other
property thereon *while occupied by them solely for
the purposes for which they were incorporated."*
CLS 1961, § 211.7, *supra.* (Emphasis supplied.)
Arguably the italicized language could disqualify
from exemption under this section any charitable
institution leasing any part of its premises. We

---

[1] A subsequent amendment to the statute, PA 1966, No 320, en-
acted a very specific exclusion, withdrawing the qualification of
houses for resident physicians located on hospital property. But
the enactment of this very specific exclusion does not alter our un-
derstanding of the import of the general provision.

think this interpretation is unreasonable, however, because circumstances may not permit a charitable institution to obtain property exactly the size required to accommodate its needs, and such an interpretation would impose inflexibility on institutions whose good judgment might dictate leasing a part of their premises, as the plaintiff has done here.

We interpret the italicized language, rather, to mean that the tax exemption granted by section 7 applies only to that property or part of property the substantial use of which is related to the charitable object or other qualifying norms for exemption.

Apportionment is employed in other jurisdictions. In *Cedars of Lebanon Hospital* v. *Los Angeles County* (1950), 35 Cal 2d 729 (221 P2d 31), the California Supreme Court granted tax-exempt status to the hospital but not to the "thrift shop" located within the hospital. See *American Sunday School Union* v. *Taylor* (1894), 161 Pa 307 (29 A 26).[2]

No contention or suggestion is made here that the property in question, except for that part of the building leased to the secretary of State, is used for any purpose other than for the hospital purposes for which the plaintiff was incorporated. Consistent with this opinion, therefore, the city of Hastings may assess and tax that part of plaintiff's building that is now or may in the future be leased to yield income to the plaintiff corporation.

The circuit court in its opinion relied on the consideration that the operations carried out by the plaintiff corporation might be competing with private noncharitable corporations. But Mr. Stekel

---

[2] For another concurring interpretation, see OAG 1935, 1936, No 64, p 88, May 21, 1935, in which the attorney general expressed his opinion that although the real estate of a benevolent association was exempt from taxation, any portion of the property used for commercial purposes was not exempt.

testified that the purchases plaintiff makes are pur-
chases the individual hospitals would make directly
from manufacturers or from medical supply houses.
Nevertheless, this consideration is not controlling.
Many charitable services, including hospital services
themselves, are likewise performed by private profit-
making organizations, but this does not negate the
qualification for tax exemption of charitable corpo-
rations which may compete with them.

The circuit court also gave consideration to the
fact that only a small fraction of the plaintiff's serv-
ices would directly benefit the city of Hastings and
its citizens. But this consideration is not relevant
to the question of qualification under CLS 1961,
§ 211.7 and § 211.9, *supra,* and we find no authority
to support this argument.

What is most persuasive to us in concluding in
favor of tax-exempt status for the plaintiff's prop-
erty is the consideration of how unwise it would be
to penalize and possibly impede this venture toward
efficiency in the administration of hospital services
by subjecting to taxation what would be indisputably
tax-exempt if performed by the member hospitals
individually. Therefore, while recognizing the gen-
eral principle that statutes granting tax exemption
should be strictly construed, we conclude that the
plaintiff, since it is a nonprofit corporation engaged
exclusively in performing hospital services which
otherwise would be performed individually by tax-
exempt hospitals, qualifies to have its property, both
real and personal, exempt from taxation under CLS
1961, § 211.7 and § 211.9, *supra.*

Reversed. The defendant city shall restore to the
plaintiff all amounts paid in taxes by the plaintiff,
plus any collection charges and interest from date of
payment, excepting that amount representing taxa-
tion of the leased, income-producing part of plain-

tiff's building. No costs since a question of a public
nature is involved.

JOHN W. FITZGERALD, P. J., and BURNS, J., con-
curred.