THE COUNCIL FOR BIBLIOGRAPHIC AND INFORMATION TECHNOLOGIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Council for Bibliographic & Information Technologies v. Commissioner
Docket No. 24789-90X
United States Tax Court
T.C. Memo 1992-364; 1992 Tax Ct. Memo LEXIS 387; 63 T.C.M. (CCH) 3186; June 29, 1992, Filed *387 Decision will be entered for petitioner. Anker M. Bell, Mark E. Vannatta, and Terren B. Magid, for petitioner. Roderick H. Fillinger, for respondent. JACOBS
JACOBS
MEMORANDUM OPINION JACOBS, Judge: After exhausting its administrative remedies, petitioner seeks a declaratory judgment pursuant to section 7428 that it is a tax exempt organization described in section 501(c)(3). The prerequisites for commencing this action set forth in section 7428, as well as the jurisdictional requirements set forth in Rule 210, have been satisfied. All section references are to the Internal Revenue Code as in effect at the time the petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure. The parties submitted this case based on the stipulated administrative record. For purposes of this proceeding, we accept the facts contained in the administrative record as true and incorporate them herein by this reference. Rule 217(b)(1). Background
Petitioner is a nonprofit Ohio corporation whose principal place of business was in Ohio on the date the petition was filed. All of its members are public and academic libraries that are exempt from Federal income *388 tax. Petitioner is controlled by its board of trustees, the members of which are elected from and by the member libraries. Petitioner is an outgrowth of Ohionet, another nonprofit corporation which qualified for tax exemption under section 501(c). Formerly, Ohionet performed four principal functions: (1) Providing its members with access to a regional library computer network which assisted them in the exchange of educational and scientific information; (2) conducting certain research activities on bibliographic and information technologies and publishing the results thereof; (3) offering a bibliographic computer program (TLM) to its members which it had developed pursuant to a cooperative research and development program conducted with its members; and (4) making computer equipment available to its members for use with TLM at a cost substantially below fair market value. Petitioner has assumed the latter three functions which Ohionet previously performed. Ohionet asked its members who used TLM to form a new organization whereby those members could assume primary and direct control of the TLM program. Accordingly, petitioner was formed, and on or about January 20, 1989, it acquired *389 TLM from Ohionet. In addition, on or about the same date, petitioner hired as its executive director the Ohionet employee principally responsible for conducting Ohionet's research activities. Each of petitioner's four current employees was previously employed by Ohionet. TLM is an on-site computerized library system. TLM uses a computer that is owned and operated by petitioner's members. TLM is a transaction system which a library and its patrons may use for circulation and cataloging. Users of TLM include terminal operators who charge or discharge books at circulation desks, technical processing staff members who label materials and create inventory records, acquisition staff members who prepare orders, and patrons or reference librarians who conduct on-line searches. Petitioner intends to continue providing TLM to its current and future members, to conduct research activities in much the same fashion as Ohionet formerly did, and to provide its members with access to computer equipment at costs substantially below fair market value, but at least equal to petitioner's costs. Petitioner receives volume discounts for its computer purchases and thus is charged lower prices for *390 purchasing such equipment than the individual members would be charged. Petitioner will also assist its members: (1) In publishing, testing, and installing the system; (2) in developing training materials and programs for the system; (3) in researching and developing new uses and technologies for the system; and (4) in facilitating the sharing of information among its members to help its members learn and adapt computer and semiotic technologies. By undertaking such activities through petitioner, rather than on an individual basis, members can share their knowledge and better perform their educational purposes. Petitioner's sources of financial support, in order of size from greatest to least, are fees assessed for the use of petitioner's services, investment income, and membership fees. Petitioner's members are assessed for petitioner's operating costs based upon the size of their library system. Petitioner retains a portion of the volume discount for equipment purchased through it, which amounts are used to reduce petitioner's future operating costs or to reduce members' future assessments. Petitioner's members pay an annual membership fee of $ 200. According to financial *391 projections which petitioner submitted to respondent, petitioner expects to realize a profit of $ 4,000 for its fiscal year ended June 30, 1989, $ 15,000 for its fiscal year ended June 30, 1990, and $ 37,000 for its fiscal year ended June 30, 1991. Upon liquidation, petitioner's assets will be distributed for one or more tax exempt purposes or will be distributed to the Federal government or a State or local government for a public purpose. On August 9, 1990, respondent issued a final adverse ruling that petitioner did not qualify for tax exemption. In said ruling, respondent stated that: You are not operated exclusively for one or more exempt purposes as required by section 501(c)(3) of the Code. You are operated to provide your member local libraries with a proprietary electronic catalogue system, software support and technological assistance, and joint purchasing activities, for which dues and assessments are charged. By providing these services, you are operated for a substantial, non-exempt commercial purpose. Discussion
A timely petition made under section 7428(a) confers jurisdiction on this Court to declare whether petitioner qualifies under section 501(c)(3) *392 as an exempt section 501(a) entity. In making our declaration, we do not engage in a de novo review of the administrative record. American Campaign Academy v. Commissioner, 92 T.C. 1053, 1063 (1989). Rather, we base our determination upon the reasons which respondent provided in the determination notice to petitioner. H. Rept. 94-658, at 285 (1976), 1976-3 C.B. (Vol. 2) 695, 977. Thus, the scope of our inquiry is limited to the propriety of the reasons which respondent gave for denying petitioner's application for exempt status. As an aside, we note that respondent rests denial of exempt status solely on petitioner's failure to operate exclusively for exempt purposes. In respondent's final adverse determination and the briefs filed herein, respondent does not argue that petitioner is a feeder organization under section 502; thus, we shall not address section 502 or the regulations thereunder. Section 501 provides in part: (a) Exemption From Taxation. -- An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. * * * * (c) List of Exempt *393 Organizations. -- The following organizations are referred to in subsection (a): * * * * (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes * * * To qualify as a tax exempt organization described in section 501(c)(3), an organization must be both organized and operated exclusively for one or more of the purposes specified in that section. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. These two requirements are known as the organizational and operational tests. If an organization fails to meet either test, it is not tax ex empt. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.; Levy Family Tribe Foundation, Inc. v. Commissioner, 69 T.C. 615, 618 (1978). Respondent concedes that petitioner meets the organizational test. Thus, the only issue before us is whether petitioner is operated exclusively for one or more of the purposes set forth in section 501(c)(3). An organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities that accomplish one or more of *394 the exempt purposes specified in section 501(c)(3). Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. The "presence of a single * * * [nonexempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly * * * [exempt] purposes." Better Business Bureau of Washington, D.C. v. United States, 326 U.S. 279, 283 (1945). Accordingly, we assume arguendo that petitioner's activities further one or more exempt purposes, and endeavor to ascertain whether petitioner has a substantial, nonexempt purpose. Respondent argues that petitioner is operated for a substantial, nonexempt commercial purpose. We disagree. Several cases support our conclusion. In Hospital Bureau of Standards & Supplies, Inc. v. United States, 141 Ct. Cl. 91, 158 F. Supp. 560 (1958), [1] a cooperative formed and controlled by its members sought exemption under section 501(c)(3). All of the members were hospitals not conducted for profit. The cooperative purchased supplies on behalf of its members. The cooperative received volume discounts for its purchases and thus was charged prices lower than the prices which would be *395 charged to its members. The cooperative billed its members at a price higher than the price it paid; the profits resulting from the collections from members were credited to their accounts at the end of each quarter. In addition to purchasing supplies, the cooperative maintained a research department to establish uniform quality and price standards for supplies which its members ordinarily used. The Government argued that the cooperative in Hospital Bureau was not entitled to tax exemption. It contended that the operations of the cooperative were not an integral part of the operations of its member hospitals since the cooperative did *396 not perform hospital services. The Hospital Bureau court noted that where a taxpayer engages in a business enterprise that bears a close and intimate relationship to the functioning of a tax exempt organization, the taxpayer is exempt from taxation. Regarding the cooperative in Hospital Bureau, the court stated that "Unquestionably the technical analysis and purchase of hospital supplies from suppliers are necessary and indispensable to the operations of the plaintiff's member hospitals." Id. at 562. Therefore, the court concluded that the cooperative was exempt from taxation under section 501(c)(3). In the instant case, respondent argues that petitioner is not entitled to an exemption because: petitioner's primary activity is not to perform functions that advance education within the meaning of section 501(c)(3). Petitioner does not primarily operate a computer network by which information, such as educational or research data, or bibliographic information is exchanged, shared, or disseminated among members as well as the general public. The TLM system * * * is designed to be nothing more than a local library administrative system used by local libraries to catalog *397 information, perform research, control circulation of materials, track overdue materials, compute the amount of fines due on the overdue materials, and bill for these amounts. In our opinion, petitioner's activities, like those of the cooperative in Hospital Bureau, are necessary and indispensable to the operations of petitioner's members. In order for a library to function, materials must be ordered, added to the catalogue system, shelved, located by patrons or staff, checked out, checked in, reshelved, and eventually removed from the catalogue system. Such activities are the essence of running a library. Accordingly, since we conclude that petitioner's activities bear a close and intimate relationship to the functioning of its tax exempt members, we hold that petitioner is entitled to tax exemption as an educational institution under section 501(c)(3). In Chart, Inc. v. United States, 491 F. Supp. 10 (D.D.C. 1979), revd. on another issue 652 F.2d 195 (D.C. Cir. 1981), a cooperative formed by and controlled by its members sought exemption from taxation under section 501(c)(3). The cooperative provided shared electronic data processing *398 services exclusively to its members. All of the cooperative's members were exempt hospitals. The cooperative's sole source of financial support was membership fees which were based upon the organization's annual budgeted operating costs. Electronic data processing services were an integral part of the member hospitals' activities. The District Court held that the cooperative was exempt under section 501(c)(3). Citing Hospital Bureau and the numerous cases which hold that cooperatives formed and controlled by nonprofit hospitals to provide laundry services to member hospitals qualify for exemption under section 501(c)(3), [2] the court noted that "the clear weight of authority holds that cooperative hospital organizations such as the plaintiff qualify under section 501(c)(3)." Id. at 14. *399 The activities of petitioner closely parallel those of the cooperative in Chart. Petitioner provides bibliographic information, computer technology, and related services exclusively to its tax exempt member libraries. Its largest source of financial support is from fees assessed for the use of its services; such fees are based on petitioner's operating costs and the size of each member's system. In addition, the activities of petitioner are an integral part of the members' activities. Although the District Court's opinion was reversed, the Court of Appeals stated in an unpublished opinion that the reversal was based on the conclusion that cooperative hospital organizations can qualify for exemption only under section 501(e). Thus, we believe the District Court's opinion supports our holding that petitioner is a tax exempt organization. Respondent distinguishes these cases by arguing that petitioner does not perform the exempt functions that are vital to its members' exempt purpose. As an example, respondent notes that petitioner is not operating the information systems or card catalogues. We do not find respondent's distinction persuasive. First, we note that respondent *400 has not attempted to reconcile this distinction with the holding in Hospital Bureau. In that case, the cooperative purchased supplies for member hospitals, but apparently did not use the supplies to treat patients. The court found that the cooperative's activities were indispensable to the operations of the members, and thus the cooperative's activities were an integral part of its members' tax exempt activities. Respondent has not explained why petitioner's purchase of computer equipment for its members likewise is not an indispensable activity. Second, respondent's distinction assumes that operating the information systems and card catalogues would be indispensable activities, yet purchasing computer equipment and providing software and technological assistance for each member's electronic catalogue system are not indispensable activities. We do not agree with respondent's assumption. Whether activities are indispensable to the operations of a tax exempt organization is a question of fact. As stated previously, we find that petitioner's activities are indispensable to the operations of its members. If petitioner's activities were not performed, each member library *401 would be less able to accomplish its exempt purpose. Respondent argues that the following three factors indicate that petitioner has a substantial nonexempt purpose: (1) The manner in which petitioner's activities are conducted; (2) the commercial hue of those activities; and (3) the existence and amount of annual or accumulated profits. B.S.W. Group, Inc. v. Commissioner, 70 T.C. 352 (1978). The facts in B.S.W. Group, Inc. v. Commissioner, supra, are not analogous to the facts in the instant case. In B.S.W. Group, the corporation seeking exemption under section 501(c)(3) was not formed by or controlled by tax exempt organizations. In addition, the corporation intended to offer its services for a fee to taxable organizations as well as exempt organizations. These factual distinctions are critical to the resolution of the instant case. [3] Our holding follows those cases which hold that where a group of tax exempt organizations form a cooperative to provide services exclusively to those tax exempt organizations, and the services provided are necessary and indispensable to the operations of the tax exempt organizations, the cooperative *402 is a tax exempt organization. E.g., Hospital Bureau of Standards & Supplies, Inc. v. United States, 141 Ct. Cl. 91, 158 F. Supp. 560 (1958). Respondent places great emphasis on the fact that petitioner projected a profit for its fiscal years ending June 30, 1989, June 30, 1990, and June 30, 1991. As we said in Copyright Clearance Center, Inc. v. Commissioner, 79 T.C. 793, 804 (1982), the critical inquiry is whether "there is present here a disqualifying nonexempt purpose that is 'substantial in *403 nature.'" We do not believe that petitioner realizes a "profit" as that word is traditionally used. Any funds which petitioner receives in excess of its costs will reduce petitioner's future costs or reduce members' future assessments. Whether petitioner's prices for its services and products are set at cost so that petitioner does not realize a profit or petitioner's prices are calculated to ensure that petitioner realizes a profit, all financial benefits ultimately accrue to its members. [4] Although petitioner's proposed budget indicates that it anticipated making a profit during the next three fiscal years, such merely represents the bookkeeping arrangements between petitioner and its members; these bookkeeping arrangements do not have any substantive effect on the parties. See Associated Hospital Services, Inc. v. Commissioner, 74 T.C. 213, 228 (1980). *404 Finally, during the administrative process, respondent raised two reasons for concluding that petitioner failed to qualify as an exempt organization which were either not addressed or only superficially addressed in respondent's briefs. For completeness' sake, we will quickly dispose of those arguments. First, respondent notes that petitioner is not supported by outside donors, and thus argues that petitioner lacks "donative intent". Outside donors are not required for an organization to qualify under section 501(c)(3), and courts have found organizations supported exclusively by fees and assessments to be exempt from taxation. Hospital Bureau of Standards & Supplies, Inc. v. United States, 141 Ct. Cl. 91, 158 F. Supp. 560 (1958); Chart, Inc. v. Commissioner, 491 F. Supp. 10 (D.D.C. 1979), revd. on another issue 652 F.2d 195 (D.C. Cir. 1981). At most, the absence of outside donors is but one factor which may indicate that the organization has a nonexempt purpose. Because petitioner was formed by, and is controlled by, tax exempt organizations, we give little weight to petitioner's lack of outside donors. Second, *405 respondent argues that TLM is used for administrative rather than educational functions. Without addressing the accuracy of this contention, we note that respondent does not cite any statutes or case law which provide that the performance of administrative services precludes qualification under section 501(c)(3). [5]
To summarize, we hold that petitioner has satisfied its burden of proving that it is operated exclusively for one or more exempt purposes. Decision will *406 be entered for petitioner. Footnotes
1. Sec. 501(e), which was enacted after Hospital Bureau of Standards & Supplies, Inc. v. United States, 141 Ct. Cl. 91, 158 F. Supp. 560 (1958), was decided, is now the exclusive provision whereby cooperatives formed by hospitals may qualify for tax exemption under sec. 501. HCSC - Laundry v. United States, 450 U.S. 1↩ (1981).
2. E.g., Northern California Central Services, Inc. v. United States, 219 Ct. Cl. 60, 591 F.2d 620 (1979); HCSC - Laundry v. United States, 473 F. Supp. 250 (E.D. Pa. 1979), revd. on another issue 624 F.2d 428 (3d Cir. 1980), affd. 450 U.S. 1 (1981); Metropolitan Detroit Area Hospital Services, Inc. v. United States, 445 F. Supp. 857 (E.D. Mich. 1978), revd. on another issue 634 F.2d 330 (6th Cir. 1980); United Hospital Services, Inc. v. United States, 384 F. Supp. 776 (S.D. Ind. 1974). The Supreme Court has ruled that cooperative hospital organizations can qualify for exemption only under section 501(e). HCSC - Laundry v. United States, 450 U.S. 1↩ (1981). However, the Supreme Court ruling only pertains to hospital cooperatives and not cooperatives formed by libraries.
3. Respondent also cites numerous revenue rulings in support of the Government's position. Rev. Rul. 81-29, 1981-1 C.B. 329; Rev. Rul. 74-614, 1974-2 C.B. 164; Rev. Rul. 72-369, 1972-2 C.B. 245; Rev. Rul. 71-529, 1971-2 C.B. 234; Rev. Rul. 69-528, 1969-2 C.B. 127↩. These revenue rulings are distinguishable from the instant case.
4. We note that petitioner's articles of incorporation state that upon petitioner's dissolution, petitioner's assets will be distributed for one or more tax exempt purposes. Thus, it is possible that petitioner's board of trustees, which is elected from petitioner's members, would decide to distribute petitioner's assets to nonmember tax exempt organizations.↩
5. Respondent cites Rev. Rul. 81-29, 1981-1 C.B. 329, and Rev. Rul. 74-614, 1974-2 C.B. 164. Revenue rulings are statements of respondent's position. Estate of Lang v. Commissioner, 64 T.C. 404, 407 (1975), affd. in part and revd. in part 613 F.2d 770↩ (9th Cir. 1980). Furthermore, these revenue rulings do not state that the performance of administrative services precludes qualification under sec. 501(c)(3).