# IN THE COURT OF APPEALS OF IOWA

No. 24-0103
Filed February 19, 2025

**HEALTH ENTERPRISES OF IOWA,**
    Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF REVENUE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

A nonprofit corporation seeks judicial review of the Iowa Department of Revenue's denial of tax refund claims. **AFFIRMED.**

Cody J. Edwards and Ronald L. Mountsier of Dickinson, Bradshaw, Fowler & Hagen, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, Patrick C. Valencia, Deputy Solicitor General, Ian Jongewaard, Assistant Solicitor General, and Stephen P. Sullivan, Assistant Attorney General, for appellee.

Heard by Ahlers, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Following years of contested case proceedings, the Director of the Iowa Department of Revenue denied two refund claims for sales tax, use tax, and vehicle registration fees paid by Health Enterprises of Iowa, a chapter 504 nonprofit corporation providing group purchasing access and other shared services to Iowa hospitals. Health Enterprises' members are "nonprofit hospitals licensed pursuant to chapter 135B," making them individually eligible for tax exemptions under Iowa Code section 423.3(27) (2013). But the director's final order on appeal concluded that Health Enterprises—a separate, unlicensed entity—was not eligible for the exemptions. The district court agreed with the director's conclusion on judicial review. Health Enterprises appeals, claiming that its members' tax exemptions should "flow through" to Health Enterprises.

## I. Background Facts and Proceedings

This appeal arises from a long-pending dispute over a pair of tax refund claims filed by Health Enterprises of Iowa, a chapter 504 nonprofit corporation. It comes to this court with an extensive procedural history and a more than 18,000-page administrative record. However, as the Director of the Iowa Department of Revenue observed in his final order, the dispositive facts are few and undisputed.

During the relevant period, each of Health Enterprises' members were nonprofit hospitals licensed under Iowa Code chapter 135B. In April 2016 and July 2017, Health Enterprises submitted refund claims to the department for sales tax, use taxes, and vehicle registration fees that it paid over the course of three years. As the basis for this refund, Health Enterprises claimed an exemption under Iowa Code section 423.3(27), which excludes from taxable sales the price of

certain goods and services furnished "to a nonprofit hospital licensed pursuant to chapter 135B to be used in the operation of the hospital."[1]  Health Enterprises argued that it was entitled to the exemption because it is a nonprofit entity comprised of licensed nonprofit hospitals, and because "a group of exempt institutions acting in concert should be afforded the exemption available to the exempt institutions which make up the entity."

The department denied Health Enterprises' claims.  In August 2017, Health Enterprises filed a protest.  Several years of proceedings ensued.  Following a two-day hearing, an administrative law judge issued a proposed decision that found Health Enterprises' purchases were not exempt under section 423.3(27) because it was not a nonprofit hospital licensed under chapter 135B.  Health Enterprises appealed the decision to the director, who entered a final order affirming the department's refund denials.  Finding the language of section 423.3(27) unambiguous, the director concluded "[t]here is simply nothing in the provision at issue that would indicate that an entity that is not, itself, a nonprofit hospital licensed under chapter 135B is eligible for the exemption in section 423.3(27)."

The district court affirmed the director's final order on judicial review.  Health Enterprises now appeals, challenging the department's legal conclusion that Iowa

---

[1] Health Enterprises invoked matching exemptions for use taxes and vehicle registration fees.  *See* Iowa Code § 423.6(6) (exempting from use tax goods and services "exempt from the sales tax under section 423.3," subject to exceptions not relevant here); *id.* § 321.105A(2)(c)(1) (exempting from the new registration fee "[e]ntities listed in section [423.3(27)], to the extent that those entities are exempt from the tax imposed on the sale of tangible personal property, consisting of goods, wares, or merchandise, sold at retail in the state to consumers or users").  There is no dispute that Health Enterprises' eligibility under section 423.3(27) is a requirement for all three of the exemptions it claims.

Code section 423.3(27) unambiguously requires a taxpayer to be a "nonprofit hospital licensed pursuant to chapter 135B" to qualify for an exemption. It also asks this court to find, as matters of fact, that Health Enterprises is a group of nonprofit licensed hospitals "acting in concert," that it is consequently a "nonprofit hospital licensed pursuant to chapter 135B," and that the purchases at issue in its refund claims were "used in the operation of the hospital."

## II. Standard of Review

Judicial review of agency decisions is governed by Iowa Code section 17A.19 (2024). *Lowe's Home Ctrs., LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 45 (Iowa 2018). Relief from a final agency action is available to a party whose substantial rights have been prejudiced due to one or more enumerated categories of administrative error. Iowa Code § 17A.19(10). The district court acts in an appellate capacity to review the agency action according to the standards set forth in section 17A.19(10). *Lowe's Home Ctrs., LLC*, 921 N.W.2d at 45. We apply the same standards "to determine if we reach the same result as the district court." *Id.*

The parties agree that our review should proceed under section 17A.19(10)(c), which requires us to determine whether the agency's decision was "[b]ased upon an erroneous interpretation of a provision of law." In applying that standard, we owe no deference to the department's interpretation and are free to substitute our own judgment if we conclude the department made a legal error. *See The Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 423–24 (Iowa 2010) (noting that despite the court's previous "indications of interpretive discretion" to the department of revenue, "it is difficult to

find a clear legislative delegation of interpretive authority" for a word that "has already been interpreted, i.e., explained, by the legislature through its enactment of a statutory definition").

### III.  Analysis

Iowa Code section 423.3(27) (2013) imposes two conditions for exemption from sales tax: (1) the tax-exempt goods or services must be sold "to a nonprofit hospital licensed pursuant to chapter 135B," and (2) the tax-exempt goods or services must be "used in the operation of the hospital."  Health Enterprises asks this court to find that the first requirement is satisfied when licensed nonprofit hospitals act "in concert" to purchase goods and services through an otherwise non-qualifying entity.  The parties refer to this idea as a "flow-through" or "concerted-action" theory of exemption.  Whether section 423.3(27) embraces such a rule is a pure question of statutory interpretation.

### A.  Interpretive Principles

"When engaging in statutory interpretation, we first examine the language of the statute and determine whether it is ambiguous." *Kay-Decker v. Iowa State Bd. of Tax Rev.*, 857 N.W.2d 216, 223 (Iowa 2014).  Ambiguity exists where reasonable minds could differ about the meaning of the statutory text.  *Sherwin-Williams*, 789 N.W.2d at 424 (citing Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:4, at 179 (7th ed. 2007)).  Such a dispute can "arise from specific language used in a statute," or it can stem from "the context of the entire statute or related statutes."  *Id.* at 425 (citation omitted).  If a statute is ambiguous, the court must apply the familiar principles of statutory construction to determine the legislature's intent.  *Kay-Decker*, 857 N.W.2d at 223.  But if there

is no ambiguity, "we look no further than the statute's express language." *Id.* (quoting *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 564 (Iowa 2011)).

"Special additional principles apply in tax cases." *Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 762 (Iowa 1981). Statutes imposing taxes are generally construed in favor of the taxpayer and against the taxing body. *Lowe's Home Ctrs.*, 921 N.W.2d at 46. Yet "taxation is the rule, exemption is the exception." *Iowa Network Servs., Inc. v. Iowa Dep't of Revenue*, 784 N.W.2d 772, 776 (Iowa 2010); *see also Van Buren Cnty. Hosp. & Clinics v. Bd. of Rev. of Van Buren Cnty.*, 650 N.W.2d 580, 586 (Iowa 2002) (noting tax exemptions are "generally disfavored as contrary to the democratic notions of equality and fairness, and exist solely due to legislative grace"). Thus, contrary to the general rule, statutory tax exemptions are "construed strictly against the taxpayer and liberally in favor of the taxing body." *Lowe's Home Ctrs.*, 921 N.W.2d at 46 (citation omitted). Any doubt must be resolved in favor of taxation, and the taxpayer seeking the exemption bears the burden to prove entitlement. *Sherwin-Williams*, 789 N.W.2d at 424.

## B.    Health Enterprises' Position

The cornerstone of Health Enterprises' flow-through theory of exemption is the Iowa Supreme Court's decision in *American Coll. Testing Program, Inc. v. Forst* (*ACT*), 182 N.W.2d 826 (Iowa 1970). In that case, ACT—a chapter 504 nonprofit organization whose members were delegates of educational organizations in thirty-three states—sought an exemption from sales and use tax under a statutory exemption for "private nonprofit educational institution[s]." *ACT*, 182 N.W.2d at 826 (quoting Iowa Code § 422.45(8) (1966)). The sole question before the court

was whether ACT was an "educational institution" under the exemption statute in effect at the time. *Id.* at 827.

Observing that tax exemptions must be strictly construed, the court found that ACT's primary purpose of developing and administering college placement exams was beyond the plain meaning and prior interpretations of the phrase "educational institution." *Id.* at 827–28 (conceding that "ACT's activities are related to the educational process," but explaining "the fact that it performs a valuable service for students and schools does not qualify it as an educational institution"). In reaching this conclusion, the court distinguished educational *institutions* from educational *activities*, emphasizing that "the legislature knew how to exempt all persons engaged in educational activities from the payment of sales tax on goods or services purchased for use in such activity, if it wished to do so." *Id.* at 828 (citing *Cmty. Drama Ass'n of Des Moines v. Iowa State Tax Comm'n*, 109 N.W.2d 23 (Iowa 1961)).

After determining that ACT was not an educational institution within the plain language of the statute, the court closed its opinion by noting:

> Plaintiff also cites cases which support the proposition that an activity which would be exempt if performed by an exempt institution is also exempt when several qualifying institutions act in concert, such as a hospital laundry[,] or an organization for joint purchasing by hospitals to take advantage of volume discounts.
>
> We do not quarrel with the results reached in the cited cases but do not find them analogous to the case at bar.

*Id.* (internal citations omitted).

Relying on the above passage, Health Enterprises contends that in the *ACT* decision, the Iowa Supreme Court introduced a flow-through or concerted-action

theory of exemption applicable to all Iowa sales tax exemptions. Yet it cites no Iowa appellate decision relying on *ACT* or otherwise finding a non-exempt entity may claim a tax exemption based on the eligibility of its members. Instead, it points to a 1992 Iowa Attorney General opinion relying on *ACT* to find a chapter 28E entity would enjoy the same property tax exemption as its constituent municipalities, *see* Op. Iowa Att'y Gen. No. 92-11-4 (Nov. 12, 1992), 1992 WL 470385, at *3, and a district court's summary judgment ruling in a different proceeding that discussed *ACT* in determining whether Health Enterprises qualified as a charitable organization under Iowa's property tax exemption statute.

To shore up its Iowa authority, Health Enterprises cites several out-of-state cases finding multi-hospital ventures eligible for state tax exemptions based on the exempt status of their members. *See Dep't. of Revenue v. Cent. Med. Lab'y*, 555 S.W.2d 632, 633–34 (Ken. 1977) (finding a medical laboratory organized by nonprofit hospitals was exempt from sales and use taxes under a statute incorporating Kentucky's constitutional exemption for "institutions of purely public charity"); *Cmty. Hosp. Linen Servs., Inc. v. Comm'r of Tax'n*, 245 N.W.2d 190, 194–95 (Minn. 1976) (finding property of hospital laundry wholly owned by public hospitals was constitutionally exempt from taxation, reasoning a subsidiary "devoted exclusively to serving the purposes of the parent corporations" may be "disregarded as a separate tax entity"); *Hosp. Purchasing Serv. of Mich. v. City of Hastings*, 161 N.W.2d 759, 761 (Mich. Ct. App. 1968) (finding the real and personal property of a hospital group purchasing organization exempt under Michigan's statutory exemption for "charitable . . . institutions"). It also cites several federal

court decisions and IRS private letter rulings reaching similar conclusions under applicable federal tax laws.

Finally, Health Enterprises argues that the department itself has embraced the flow-through exemption theory through prior rulemaking. In the wake of the 1970 decision in *ACT*, the department amended its rules implementing the exemption in former section 422.45(8) to recognize that a "private nonprofit educational institution" includes "a group of qualifying organizations acting in concert." Iowa Admin. Code r. 701-17.11 (1977). That rule remained on the books for more than four decades,[2] even after the legislature amended section 422.45 to include a distinct statutory definition of "educational institution"—now codified at section 423.3(17)—that did not include "a group of qualifying organizations acting in concert." *See* 2001 Iowa Acts, ch. 150, § 3.[3]

Although the department has never promulgated a similar rule defining "nonprofit hospitals" under section 423.3(27), Health Enterprises contends the department's longstanding rule for educational institutions all but acknowledged that a flow-through exemption "is implicit in the law" of taxation in Iowa. According

---

[2] The department rescinded former rule 17.11 in July 2024 during the pendency of this dispute. *See* 47 Iowa Admin. Bull. 455 (July 24, 2024).

[3] The statute now provides:

> The sales price of all tangible personal property, specified digital products, or services, used for educational purposes sold to any private nonprofit educational institution in this state. For the purpose of this subsection, "educational institution" means an institution which primarily functions as a school, college, or university with students, faculty, and an established curriculum. The faculty of an educational institution must be associated with the institution and the curriculum must include basic courses which are offered every year. "Educational institution" includes an institution primarily functioning as a library.

Iowa Code § 423.3(17) (2024).

to Health Enterprises, the department's prior interpretation of "educational institution" suggests there is ambiguity in section 423.3(27) because the exemptions are "located within the same statute and . . . have [the] same basic requirements." Finally, Health Enterprises emphasizes deposition testimony by a department designee, who acknowledged that two hospitals sharing the cost of jointly purchased equipment could "claim the exemption on their half of the purchase price."

### C.    Iowa Code § 423.3(27) is Not Ambiguous

The problem with Health Enterprises' position is that its flow-through exemption theory is nowhere to be found in the language of section 423.3(27), nor is it even between the statute's lines. And that is the beginning and end of our inquiry. *See Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 50 (Iowa 2024) ("When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute." (cleaned up)). Health Enterprises' theory is, at best, a policy proposal to expand Iowa's sales tax exemption to organizations that "the legislature knew how to exempt . . . if it wished to do so." *ACT*, 182 N.W.2d at 828. If this court is to pay "anything more than lip service" to the rule that tax exemptions must be narrowly construed, *id.* at 827, then the director's final order must be affirmed.

We repeat what each of the reviewing courts before us already found: the language of section 423.3(27) is facially unambiguous. To qualify for the exemption, a purchaser of goods or services must be "a nonprofit hospital licensed pursuant to chapter 135B." Iowa Code § 423.3(27). Through its reference to chapter 135B, the legislature expressly conditioned exemption on a purchaser's

licensure status under a separate statutory scheme—indicating its intent to tether eligibility to a class of *entities*, not a range of activities. *See Sherwin-Williams*, 789 N.W.2d at 425 (noting courts may not override the legislature's decision to "act as its own lexicographer" (citation omitted)); *ACT*, 182 N.W.2d at 828 ("There is a distinction between being engaged in educational activities for educational purposes and educational institutions."). It is not hard to think of broader language—such as "nonprofit healthcare organization"—that might have left room for debate about whether non-hospitals could qualify. This court's role, however, is to interpret "the language chosen by the legislature," not a hypothetical alternative. *Vaudt*, 4 N.W.3d at 50 (citation omitted).

For lack of textual support, Health Enterprises tries to locate an exemption in "the patina of prior judicial interpretation." *Doe v. State*, 943 N.W.2d 608, 612 (Iowa 2020). But its argument is built on a single statement in a decision construing the broader language of a different exemption. *ACT*, 182 N.W.2d at 828. By declining to "quarrel with the results" of out-of-state cases finding tax exemptions for multi-hospital ventures, the supreme court simply distinguished those authorities on their facts. *Id.* ("We . . . do not find [these decisions] analogous to the case at bar."). It did not announce a new rule of construction or discuss whether a flow-through theory of exemption might apply under Iowa law.

Even if *ACT* stood for the rule that Health Enterprises attempts to distill, its application would remain doubtful here. Importantly, the *ACT* court was asked to decide whether a college-placement testing organization qualified as an "educational institution." *Id.* at 826. And each of the cases it cited concerned whether hospital laundries or group purchasing organizations were "charitable"

entities under applicable state exemptions. *See Hosp. Purchasing Serv.*, 161 N.W.2d at 760; *Children's Hosp. Med. Ctr. v. Bd. of Assessors of Bos.*, 227 N.E.2d 908, 914 (Mass. 1967); *Hosp. Bureau of Standards & Supplies, Inc. v. United States*, 158 F. Supp. 560, 561 (Ct. Cl. 1958). These terms are markedly more open-ended than the phrase "nonprofit hospital licensed pursuant to chapter 135B," which our legislature defined by reference to a separate statutory scheme. This court may not expand unambiguous language under the guise of construction. *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 168 (Iowa 2016).

As for its argument that the department has embraced a flow-through exemption, Health Enterprises fails to explain how the department's former definition of "educational institution" or the purported concessions of an agency deponent control this court's statutory interpretation on review for legal error. The bar is high for parties seeking to invoke the principles of estoppel against a government body, *see ABC Disposal Sys., Inc. v. Dep't of Nat. Res.,* 681 N.W.2d 596, 607 (Iowa 2004), and Health Enterprises makes no such argument in its briefing. And although Iowa Code section 17A.19(10)(h) provides relief from agency actions that depart without reason from "the agency's prior practice or precedents," Health Enterprises stops short of asserting that the department's interpretation of section 423.3(27) lacks a rational basis or conflicts with its previous applications of the same exemption.

At bottom, Health Enterprises' argument is not rooted in statutory interpretation—it is rooted in policy. It contends the law should not "penalize, through taxation, a group of nonprofit hospitals . . . joined together for a common

purpose, such as reducing costs and providing greater access to care." *See, e.g.*, *Hosp. Purchasing Serv.,* 161 N.W.2d at 762 ("We think it would be unwise to interpret the statutory provisions under scrutiny here so as to conclude that what is free from taxation when accomplished by hospitals individually, is suddenly subject to taxation when hospitals act in concert."). But whether sound policy dictates expansion of a tax exemption is not for us to decide. *See Randolph v. Aidan, LLC*, 6 N.W.3d 304, 308 (Iowa 2024) (stating the "first principle" of statutory construction is that "courts don't write statutes" (citing Iowa Const. art. III, § 1)). Health Enterprises has come to the wrong branch of government for its relief.

### D. Health Enterprises' Factual Issues

Separate from the interpretative question that marks the throughline of this case, Health Enterprises asks the court to decide several unresolved factual issues:

> Health Enterprises requests this Court rule that (1) Health Enterprises is a group of nonprofit hospitals licensed pursuant to chapter 135B acting in concert, (2) due to Health Enterprises' relationship with its member hospitals, Health Enterprises is considered a nonprofit hospital licensed pursuant to chapter 135B, and (3) purchases by Health Enterprises are "used in the operation of the hospital" as that phrase used in Iowa Code § 423.3(27).

The department contends these issues are not preserved for appellate review because they were never decided by the decision-makers below. We agree.

This is a court of review, not first-view. *See Lowe's Home Ctrs.*, 921 N.W.2d at 53 (remanding for determination of factual questions left unaddressed by the Department and district court). "Just as we do not entertain issues that were not ruled upon by the district court . . . , we decline to entertain issues not ruled upon by an agency when the aggrieved party failed to follow available procedures

to alert the agency of the issue." *KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d 308, 329 (Iowa 2010) (internal citation omitted) (citing *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002)). Because Health Enterprises' fact issues were never resolved by the department, we cannot do so ourselves on judicial review of this 18,000-page administrative record. *See StateLine Coop. v. Iowa Prop. Assessment Appeal Bd.*, 958 N.W.2d 807, 817 (Iowa 2021) ("The role of an appellate court in an administrative review proceeding is not to be primary fact-finder.").

**AFFIRMED.**